UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

VANDANA CHAK,

                              Plaintiff,

                versus
                                                          **Index No:  23CV2361**

NEW YORK STATE DEPARTMENT OF EDUCATION,

Dr. BETTY A. ROSA COMMISSIONER  NEW YORK

STATE EDUCATION DEPARTMENT,  NEW YORK

CITY DEPARTMENT OF EDUCATION, DR. BETTY A.

ROSA, SHARON L.VELTMAN and JANET MAXWELL

WICKETT,

                              Defendants.


_____

AFFIRMATION IN OPPOSITION TO DEFENDANT, NEW YORK CITY DEPARTMENT OF EDUCATION'S ('DOE') MOTION TO DISMISS COMPLAINT & IN SUPPORT OF CROSS-MOTION TO AMEND COMPLAINT

      Plaintiff, Vandana Chak appearing pro se affirm as follows:

      1.      When a Court reviews a motion to dismiss for failure to state a claim for which relief can be granted, it must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 100 (2d Cir. 2005). A motion to dismiss for failure to state a claim upon which relief can be granted should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. (Fed. Rules Civ. Proc. Rule 12(b)(6), 28 U.S.C.A.  Failure to state a claim is redressable by amendment.  When a federal court reviews

sufficiency of complaint at pleading stage on a motion to dismiss for failure to state a claim, the issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Fed. R. Civ. P. 12(b)(6).

## **Statement of the Case**

2.      The right in the appointment as an impartial hearing officer (IHO) derives from the enabling federal statute Individuals with Disabilities in Education Act ("IDEA"). From that appointment flows the duty of that appointment. Plaintiff was offered the position of an IDEA impartial hearing officer ("IHO") by New York State Education Department ("NYSED") and New York City Department of Education ("DOE") as of January 5, 2021.  Both entities have an intertwined relationship such that the IHO training and certification was for the stated purpose of adjudicating cases involving DOE.   By about April 2021 after DOE had conducted certain administrative training Plaintiff like other IHOs was placed on DOE's case allocation rolls.  A copy of the offer letter is attached as **Exhibit A**.  The position does not have a retirement age or term.

3.     DOE's position in its motion is that "DOE has no role in the decertification process-it is run entirely by the Commissioner" pursuant to 8 NYCRR 200.21. see DOE Memo of Law  p. 9.

4.     Contrary to DOE's contentions the termination or revocation of certification involves State action that adjudicates important rights. IHOs pursuant to State law (N.Y. Educ. Law §4404(1)) are "deemed" (a legal fiction), not to be employees, for purposes of separation of executive and judicial roles. In fact they are employed, even though they may not be employees under the Administrative Code.

5.      While DOE's position is that no unconstitutional conduct existed or that they have no knowledge of unconstitutional conduct, these DOE arguments will have to wait for summary judgment proceedings or trial.  When DOE assigns a case to an IHO it employs an IHO to adjudicate pursuant to a contract it and NYSED has with the IHO.

6.      At all relevant times DOE managed and ran the entire impartial hearing system other than certain transfers to the OATH system.  DOE's relationship with NYSED is interlinked with respect to control of the fundamental aspects of IHO's employment relationship. DOE's impartial hearing office assigns cases, assigns case managers, manages documentation of decisions and orders, receives and pays invoices for work done by IHOs.

7.      DOE was a party to each underlying case.  At all relevant times the hearings were held telephonically or by video when a proprietary system was set up in 2022.  DOE assigned cases to IHO's.  DOE settled claims not awarded by Plaintiff in the underlying case to complaint #352.   DOE settled substantively the entire case during the hearing in underlying case to complaint #353.  DOE was respondent in each appeal.  The Complaint details communication with DOE, NYSED and plaintiff.  Therefore, DOE clearly knew of the investigations initiated by NYSED.  During the response period provided to Plaintiff on complaints #352 and #353, DOE did not provide Plaintiff with information and discovery requested.  The allegation of bias found against Plaintiff on the underlying Complaint #352 is that of bias towards DOE.  DOE's motion conceals it from Court's scrutiny.  DOE and NYSED has yet to file an answer to the complaint to explain this finding and others, alleging harm to children and parents.

8.    The scope and nature of DOE's participation or omission to participate in the revocation process which it says is run entirely by NYSED is an issue of fact that will have to wait for summary judgment proceedings or trial.

9.    As DOE was present at the hearing in the underlying case to complaint #353 in which alleged misconduct by Plaintiff has been determined by NYSED, its inputs to the Commissioner's review process on the issue cannot be resolved on a motion to dismiss.

10.    DOE hold the administrative records and is responsible for providing the administrative record to the court and to parties in the event that there is related litigation

11.    Plaintiff suffered a constitutional injury when defendants violated her pre deprivation due process rights leading to a revocation.  The due process clause protects against arbitrary and capricious government action even when the decision to take action follows adequate procedure.  Plaintiff was not afforded the pre-deprivation process pursuant to 8 NYCRR 200.21 and the process used instead at NYSED's whims is arbitrary, capricious and illegal.  Hearing required by due process must be meaningful. *Armstrong v. Manzo, 380 U.S. 545*.  DOE violated Plaintiff's protected duty of the job as a hearing officer by consistently failing to meet their statutory burden of proof in violation of the law as it did in the impugned actions.

12.    Plaintiff has a property interest in her employment because all New York IHOs enjoy for-cause job protection.  An IHO's employment can only be terminated for good cause. (8 NYCRR 200.21 (5)).  Plaintiff, had an expectation of continued employment. *Bell v. Burton, 402 U.S. 535 (1971); Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). DOE and NYSED continually emphasized that IHOs make adjudicating IDEA claims a

full time commitment to reduce an existing backlog of several thousand cases. NYSED is November 2021 sent out notices to decertify IHOs who had not taken on a heavy case load, many of whom were committed to other full time work prior to their certification. Plaintiff was not among the group so notified. Plaintiff and several other IHOs relied upon NYSED's representations and have made the IHO work as the primary source of their livelihood.

13.    Plaintiff adjudicated cases for almost two year as her means of livelihood until the unlawful revocation. Action taken by a state which destroy the value or utility of a protected property interest constitutes a Fourteenth Amendment deprivation of that interest for which due process cannot be denied. *Stidham v. Peace Officer Standards And Training, 265 F.3d 1144 (2001).*

14.    Any of several sources of state law, including a local government's personnel policy manual, can create a property interest protected by the Due Process Clause. *See Dickeson v. Quarberg,* 844 F.2d 1435, 1437 (10th Cir.1988) (stating that protected property interests may be created by "state statutes, local ordinances, established rules, or mutually explicit understandings"). "Central to our inquiry is whether plaintiff was an "at-will" employee at the time of her termination. If plaintiff served at the will of the County Treasurer, she could be terminated "at any time, for any reason or for no reason at all." *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 217 (Wyo.1994). (county personnel policy manual stating that employees could not be fired "except for cause or reasons of curtailment of work or lack of funds" conferred "a property interest in continued employment that could not be curtailed without constitutional protections". *See West v. Grand County,* 967 F.2d 362, 366 (10th Cir.1992).

15.     The 'good cause' clause does not provide NYSED jurisdiction to run a concurrent forum on issues that are within the statutory subject matter jurisdiction of the State Review Office ("SRO") appeal process, or that of the Court.

16.     Plaintiff had a property interest in her IHO position.   She has a liberty interest in earning a living as she was doing so as an IHO, in her reputation, protection from retaliation, freedom to render independent decisions and in freedom from arbitrary adjudicative process, that all defendants violated, injuring plaintiff.   Placing is the revocation order without any underlying finding that Plaintiff harmed children and parents is an extreme reputational harm for any person. In applying for any job or position the reason for leaving a previous position is a necessary disclosure.   Such a false order on a New York attorney's record precludes Plaintiff from undertaking other positions in the legal business.   The impugned order uses words imputing falsely immorality and criminal behavior to Plaintiff.   It does the same is stating misconduct.   It does the same in stating incompetency.   It is more than a revocation.   It defames without cause.

17.      "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austi*n, 545 U.S. 209, 221 (2005).   "The liberty interest that due process protects includes the individual's freedom to earn a living." *Lentsch v. Marshall*, 741 F.2d 301, 303 (10thCir. 1984).

18.     Any denial of Due Process must be tested by the "totality of the facts" because a lack of Due Process may 'constitute a denial of fundamental fairness, shocking to the universal sense of justice…" *Malloy v. Hogan*, 378 U.S. 1, 26 (1964).

19.     The Complaint details NYSED's framing of allegations knowing them to be false, and beyond NYSED's adjudicatory jurisdiction, assigning of its investigation under 8 NYCRR 200.21 to a resident of Illinois whose reports show an intentional ignorance of basic principles of law to reach false conclusions and, where she states that the complaining party received all the relief they wanted, while assisting is the construction of dubious investigatory reports to injure Plaintiff, driven both by unlawful and discriminatory intent.

20.     Deprivation without due process of law is protected by the Fourteenth Amendment of the Constitution. The facts further show grossly disproportionate punishment of revocation, where 8 NYCRR 200.21 provides a graduated remedial scheme, without a basis in facts, driven clearly by discriminatory and unlawful intent. These determinations can only be resolved in a motion for summary judgment or trail.

21.     Case law cited by DOE in connection with the availability of a post deprivation remedy whether an Article 75 or 78 legal proceeding is a discussion on the availability of due process when a pre deprivation process would not be possible, when acts alleged are random and unauthorized.   In the present case the Complaint places sequentially the intentional acts of defendants none of which were random or unauthorized.

22.     It is well settled that a plaintiff need not exhaust the former (Article 78) before pursuing the latter (Federal proceeding). *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 482, 5 L.Ed.2d 492 (1961)."

23.     Dr. Rosa is a high level official of the State as is Ms. Veltman at the State's Due Process Unit.   Their acts include a review of the underlying complaints and response.   That would reasonably require inputs by DOE as the other party to inform their review, their framing

of impugned allegations, appointing Ms. Wickett as investigator, their Order dated November 21, 2022 and January 12, 2023.    Each of these decisions closely resemble established state procedures rather than the haphazard acts of individual state actors that the *HellenicAmerican* exception argued by DOE was designed to cover. *Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005).

24.    In *Giglio v. Dunn*, 732 F.2d 1133 (2d Cir. 1984) cited by DOE the court found that "a coerced resignation does not involve a showing of cause." For "this reason, it is hard to visualize what sort of prior hearing the Constitution would require the employer to conduct." Giglio in his circumstances could avail of a post deprivation Article 78 proceeding to challenge the voluntariness of his resignation and thus his claim of due process violation was dismissed.  In Giglio the court examined other cases and distinguished for impracticability of holding a hearing prior to the claimed deprivation.  In the present case the impracticability of holding a pre-determination hearing is not at issue.  In *Arrendondo v. Cnty. Of Nassau*, 2012 U.S. Dist. LEXIS 36156 (E.D.N.Y. Mar. 16, 2012), which DOE cites, the court found that no defendant was a state actor and thus in dismissing the case found that the time to avail of other available proceeding pursuant to Article 75 or 78 had ended.  The court did not suggest that plaintiff had available a state complaint process to press bias and challenge the arbitrator's decision which the plaintiff disagreed with, as arbitrator's incompetency.  In the present case the conduct complained of implicates Ms. Rosa, Ms. Veltman and Ms. Wickett all of whom are state actors. An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk Cnty. v. Dodson,* 454 U.S. 312, 317-18, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)).

25.     Whether NYSED's acts in the alleged review and investigation pursuant to 8NYCRR 202.21 are random and unauthorized acts as alleged by DOE in the motion remains best resolved on a summary judgment motion or trial.

26.     Plaintiff had exhausted all administrative remedies.  In fact, Plaintiff had served the Commissioner a petition pursuant to Education Law Section 310 on November 17, 2022 and filed it on November 21, 2022 pursuant to Education Law Section 310, which the Commissioner dismissed as non-maintainable on January 12, 2023.  This order is attached as **Exhibit B.**  DOE's legal discussion on exhaustion of administrative remedies in the motion memorandum is redundant.  NYSED revoked Plaintiff's certification on November 21, 2022.  No administrative remedy is available beyond the impugned NYSED revocation.

Proposed Cause of Action of Systemic Violation by DOE

27.     At all relevant times since Plaintiff's appointment as an IHO and at all relevant times prior upon information and belief, DOE has put into place a litigation strategy, and makes its representatives participate in a systemic violation of its statutory mandate (N.Y. Educ. Law § 4404[1][c]) to meet the burden of proof, including the burden of persuasion and burden of production.

28.     DOE has an instituted litigation strategy not to provide discovery which is a systemic violation and thwarts any attempt in several different ways. This systemic violation violates the intent of due process proceedings pursuant to IDEA. The egregiousness of this systemic violation often leaves the record devoid of the foundational document the Individualized Education Plan ("IEP").

29.    Plaintiff alleges that DOE and NYSED have established unlawful practices which are systemic in their application and directly impact the independence of an IHO's decision.  It is because Plaintiff rejected these practices that she was injured by a revocation of her certification. The Complaint details some of the key sequence of events and discovery from DOE would develop the full context.

30.    In about 50 cases that Plaintiff presided upon, only in about seven did DOE enter documents into evidence whenever it was required to sustain its burden.   The plaintiff faced with this violation in several cases sought technical assistance from NYSD who advised that the hearing officer should seek discovery from DOE as an IHO's decision has to be made on substantive grounds (34 CFR§300.513(a)).   This placed Plaintiff is a situation of seeking discovery from DOE, with no remuneration for the work scheduled by NYSED.

31.    An IHO has liberty interest in writing a decision on an informed record in the absence of which an IHO is a 'rubber stamp' on whatever the parent claims from public funds.  It displays DOE and NYSED's deliberate indifference to the constitutional rights of free speech, of informed speech by an IHO as an adjudicating officer to write an independent informed decision.

32.    The record of the underlying complaints will demonstrate the expectation of a "rubber stamped" or a "default" decision that this unlawful conduct of the DOE has built systemically and is supported by NYSED such that a capricious and arbitrary finding has been rendered to injure Plaintiff's property and liberty interests.

33.    The two cases underlying the impugned complaints demonstrate that to this systemic violation of its statutory mandate (N.Y. Educ. Law § 4404[1][c]) is added another violation of looking away from the requirement of Education Law Article 167 §8803, that only

Licensed Behavior Analyst provide ABA therapy. Once again its to the advantage of the private service provider who seeks licensed therapist rates and to child's harm.

34.    The environment that DOE has created by an unlawfully established practice by state actors increases the vulnerability of IHO's harm by others to falsely allege incompetency and harm. An IHO on each case is required to expose herself to this unlawful practice as was Plaintiff.

35.    DOE maintains the relevant documents for each student in electronic format which is easily accessible, but fails to submit even the foundational individualized education plan ("IEP") or if submitted fails to introduce it into evidence.

36.    This systemic unlawful litigation practice lowers the representation mandate of a DOE school representative and counsel to the detriment of an informed decision.

37.    This long practiced systemic violation by DOE raises the question of a classic conflict of interest paradigm of the possibility of both the parties being on the same side, yet they do not present a resolution in the statutory 30 days period. The primary interest litigated is reimbursement or funding of educational and related services. DOE does not in Plaintiff's experience seek an information subpoena when the claim is for reimbursement for private services or a compensatory claim for a child in a parochial school, but just states that the schools don't provide information.

38.    The Court is requested to take judicial notice of the published External Review Of The New York City Impartial Hearing Office Submitted by: Deusdedi Merced dated February 22, 2019 at page 18 where it record that in school year 2018-2019, there were 6968 recusal request by IHOs. The Court is also directed towards its footnote note 22 at page 10.

39.     Upon information and belief the record of the two impugned cases will demonstrate how claims unsubstantiated in evidence were allowed by DOE post the IHO decision which arguably raised the confidence of the complaining attorney to file a false and malicious complaint against Plaintiff which had the support of DOE, Ms.Veltman, Ms. Wickett and Ms. Rosa.

40.     The systemic violation is place by DOE caused a constitutional violation to Plaintiff.

## PROPOSED CAUSE OF ACTION OF SYSTEMIC VIOLATION BY NYSED

41.     Upon information and belief NYSED has established a backdoor systemic practice not supported by the law to place itself through the complaint process under 8 NYCRR 200.21 in the shoes of the SRO as an alternative to an appeal by posing a complaint by a party claiming to correct an error in an IHO decision.  All the complainant has to do is allege incompetence or misconduct.  The abuse is greater when not the party but the attorney making the complaint has received all they requested.  This circumvention is unconstitutional.  This has been attempted on the pretext of solving administrative hitches that several recent IHOs were experiencing as hearing were online and no office for IHOs existed for immediate clarifications, in the context of the systematically violated hearing environment by DOE's systemic violations. On April 29, 2022 NYSED sent a memo to NYC and all IHO's which sneaks in this unlawful jurisdiction as NYSED policy. At page 2 paragraph 3 of this memo it states "Should an impartial hearing decision contain what the parties think are errors, the parties have the right to appeal the decision to the Office of State Review (8 NYCRR §200.5(k)) **or** (emphasis added) file a

complaint alleging misconduct or challenging the competence of an IHO (8 NYCRR §200.21(b))."  The memo is attached as **<u>Exhibit C.</u>**

42.    In the present case that is the unconstitutional conduct NYSED has achieved.  Ms. Veltman, who is a speech therapist by training, upon information and belief decides what the scope of review is to be defined as "error".  Ms. Veltman upon information and belief has framed orders during a hearing for IHO to write.  On October 26, 2022 Ms. Veltman, very emphatically in a webinar with IHOs incorrectly explained the requirements of an IDEA resolution period.

43.    On information and belief NYSED records state a 12,000 case backlog. On assignment of cases DOE states that IHOs are assigned cases on a rotational basis which process has never been explained.  In the context of this backlog, in the present case, in case complaint #352 the underlying case was filed on May 14, 2021 and as of May 18, 2021 it had been scheduled on a rotation in the context of the backlog with Plaintiff.  The same attorney in case complaint #352, had filed the underlying case on June 7, 2021 and it was scheduled by June 10, 2021 with Plaintiff.

44.    The Complaint details the legal and factual inaccuracies of the investigator's first report.  Further, the Complaint details how Ms. Wickets second report on which the revocation is premised was not even considered until November 23, 2022 by the Commissioner in making her revocation order on November 21, 2022, against Plaintiff.

45.    Up information and belief NYSED systemic violation practices have a chilling effect on IHO independence as NYSED had set into motion a process to controls a review of IHO decisions without accountability or jurisdiction.

46.     Under color of law Ms. Rosa, Ms. Veltman and Ms. Wickett have participated in NYSED's unlawful systemic violation and injured Plaintiff.

47.     After the 2021 recruitment of a large number of IHOs, New York attorney's, there are those who have also experienced the un-tenability of writing an informed decision in this environment.   Upon information and belief NYSED has interfered with their independence. Discovery will easily bring this fact to the fore.

48.     Plaintiff as an IHO always encouraged DOE attorneys who had been recently hired to appreciate that my respect as a hearing officer for their work would only be enhanced if discovery was produced as it allows for understanding the need for a settlement or trial.   This upon information and belief is not in the interest of NYSED's control over IHO decisions.

49.     Upon information and belief Plaintiff was targeted as it would send an unlawful message of injury to all IHO's who seek evidentiary justification and any DOE attorney who stepped up to perform pursuant to the law.   Among the group of IHOs NYSED chose Plaintiff for her minority ethnic status different from the remaining group whose ethnicity Ms. Rothenberg, Ms. Veltman, Ms. Wickett, Ms. Rosa identify with to inflict injury.   The Complaint details the cast of interests NYSED is protecting.   The revocation had both an unlawful purpose and discriminatory motivation based in ethnicity.   Therefore, its irrationality and severity.

50.     The equal protection violations are alleged to stem from –class-of-one-claim that Plaintiff was treated 'less favorably' and was afforded … fewer rights, privileges, and procedural protections" compared to similarly situated IHOs against whose decisions parties feel aggrieved.

51.     Upon information and belief in the relevant period, complaints have been filed against other IHOs by dissatisfied parties yet Plaintiff has been singled out for the impugned revocation.

52.     About 200 SRO appeals are filed and heard each year challenging IHO decisions on issues of law, and of law and fact, procedure and even bias.  There are several SRO appeals where IHO decisions have been reversed and or remanded. There are in the relevant period IHO decisions which have been fully reversed by the SRO yet no revocation of their certification has been done for incompetency or harm to the child and parent.  Ms. Veltman singled Plaintiff out from the group of IHOs to whom the protections of the appeal process and its finality is afforded, to whom constitutionally protected judicial immunity is afforded, to whom the statute gives parties the right to seek relief before the same IHO within a period on one year.  To single Plaintiff out Ms. Veltman intentionally misused the complaint process of 8 NYCRR 200.21.  She is a direct participant is concocting a systemic violation, to run a non-judicial parallel process to the SRO appeal process, unlawfully veiled by 8 NYCRR 200.21.

53.     Ms. Veltman knew, or had reason to know, that this alleged unconstitutional conduct violating Plaintiff's liberty and property interest was occurring because she was among those who personally participated in excluding and depriving Plaintiff of her constitutional and legal protections to a challenge of an IHO's decision by participating in framing the allegations.

54.     Ms. Veltman was in communication with DOE and Ms. Wickett during the relevant period.  She supervised the appointment of Ms. Wickett in Illinois.  She directly received Ms. Wickett's reports and decided on when to inform Plaintiff.  Ms. Wickett knew that this unconstitutional conduct was occurring and failed to intervene to prevent it, instead she

participated to perpetuate it.  Ms. Wickett during the relevant period is herself receiving the constitutional immunity and legal protection as an Illinois IHO whose decision is part of a bias claim against the Chicago Public Schools.

55.     NYSED and the Commissioner are direct participants in running a parallel process to the statutory appeal process.  NYSED and Commissioner at each step knew, or had reason to know, that such constitutional violations were being committed.  Prior to the revocation order Plaintiff had filed an appeal to the first determination of complaint #352 by Ms. Wickett, detailing the inaccuracies and protections, yet both knowingly singled Plaintiff out even though they had a realistic opportunity to prevent the violation from occurring, because they could have chosen to apply the law as it does to all IHOs.  Both had no evidence of Plaintiff harming children or parents before them much less the egregiousness of it.  In fact if the child was harmed it would be due to DOE's neglect as conceded by DOE at the hearing.

State Claim

56.     In New York, constitutional provisions are presumptively self executing. *People v. Carroll*, (3 NY 2d 686,691).  Manifestly, Article 1, Section 12 of the State Constitution and that part of Section 11 relating to equal protection are self executing.  Actions of State or local officials which violate these constitutional guaranteed are void. (*Foss v. City of Rochester*, 65 NY2d 247. [equal protection].  Section 11 was intended to afford coverage as broad as that provided by the Fourteenth Amendment of the United States Constitution (see *Dorsey v. Stuyvesant Town Corp.* 299 NY 512, 530).

57.     Plaintiff on November 28, 2022 (via email) and on November 30, 2022 (via postal return receipt) received the Commissioner's revocation order of November 21, 2022.  With it

was attached a NYSED determination with a post revocation of November 23, 2022 and a Ms. Wickett's report having a date of September 23, 2022. The relevant email and the revocation order and report is attached as **Exhibit D, E, F.** The Complaint details the gross inaccuracies of Ms. Wickett's September 19, 2022 report (Am. Com. ¶¶ 37-86) and facts that lead to a reasonable inference of fabrication and fraud of her report dated September 23, 2022. (Am. Com. ¶¶ 96-124).

58.     The Complaint pleads with particularity the denial of due process. Defendants deprived Plaintiff of her liberty and property interest without providing process adequate to justify their actions. *See DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003); *Vega v. Miller,* 273 F.3d 460, 470 (2d Cir. 2001).

59.     DOE's participation in 8 NYCRR 200.21 review process can not be resolved in a motion to dismiss.

60.     DOE's case law on IDEA's exhaustion requirements do not apply to these counts. Plaintiff is not a parent suing on behalf of a child.

61.     On discrimination and retaliation claims a dismissals cannot be justified under Rule 12(b)(6)."[T]he hearing officer's determination that [the plaintiff] had engaged in the charged conduct, and that these violations called for h[er] termination, does not preclude a jury from later finding that [the plaintiff] was also terminated at least in part because of [discriminatory reasons]. The plaintiff could be successful on the [discrimination or retaliation] claims even if the jury were to accept that there were legitimate reasons for terminating h[er], too." *Matusick v. Erie Cnty. Water Auth.*,757 F.3d 31, 47 (2d Cir. 2014).

62.    The Complaint was amended by Plaintiff on May 15, 2023 to add the three individual defendants and supplement the complaint with additional material facts with respect to each. All defendants have been served except Ms. Wickett to whom a Waiver was sent and received at her office address at 350 S. Northwest Highway, Suite 300, Park Ridge, Illinois 60068, which remains unreturned.

63.    "[M]alicious and sadistic" abuses of power by government officials, intended to "oppress or to cause injury" and designed for no legitimate government purpose, "unquestionably shock the conscience."  This is so because our constitutional notion of due process rests on the bedrock principle that we must protect the individual "against . . . the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Sacramento,* 523 U.S. at 845-46, 118 S.Ct. 1708 (internal quotation marks and citations omitted).

64.    As a result whether in or out of an employment context adverse action against plaintiff based on her exercise of constitutionally protected speech rights, "a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights guaranteed" by the First Amendment. *Friedl v.City of New York,* 210 F.3d 79, 86-87 (2d Cir. 2000).

65.    Municipal corporations, like municipal employees, are "persons" who may be liable under § 1983, which imposes liability against every person who, under color of state law, deprives another of a federally protected right. 42 U.S.C.A. § 1983. In re *Joe's Friendly Serv. & Son, Inc.,* 645 B.R. 94 (Bankr. E.D.N.Y. 2022).

66.    In addition to the systemic violations claims and that of First Amendment violations Plaintiff on the facts alleged in the Complaint is also seeking leave to state a 42 U.S.C. 1981 race and retaliation claim against each individual state actor.

Respectfully submitted

Dated: July 11, 2022
New York, New York

*Vandana Chak*

_____
Vandana Chak, Plaintiff. Prose

TO:
Defendant DOE, Counsel
John Treat, Esq.
Defendant NYSED Counsel
Samuel Martin, Esq.

*Table of Authorities:*

| | |
|---|---|
| *Cleveland v. Caplaw Enters.,* 448 F.3d 518, 521 (2d Cir. 2006) | |
| *Nechis v. Oxford Health Plans, Inc*., 421 F.3d 96, 100 (2d Cir. 2005). | |
| *Armstrong v. Manzo, 380 U.S. 545.* | |
| *Bell v. Burton, 402 U.S. 535 (1971)* | |
| *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). | |
| *Stidham v. Peace Officer Standards And Training* | |
| *Dickeson v. Quarberg,* 844 F.2d 1435, 1437 (10th Cir.1988) | |
| *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 217 (Wyo.1994). | |
| *West v. Grand County,* 967 F.2d 362, 366 (10th Cir.1992) | |
| *Wilkinson v. Austi*n, 545 U.S. 209, 221 (2005). | |
| *Lentsch v. Marshall*, 741 F.2d 301, 303 (10thCir. 1984). | |
| *Malloy v. Hogan,* 378 U.S. 1, 26 (1964). | |
| *Monroe v. Pape,* 365 U.S. 167, 183, 81 S.Ct. 473, 481, 482, 5 L.Ed.2d 492 (1961). | |
| *Velez v. Levy,* 401 F.3d 75 (2d Cir. 2005). | |
| *Giglio v. Dunn,* 732 F.2d 1133 (2d Cir. 1984) | |
| *Arrendondo v. Cnty. Of Nassau,* 2012 U.S. Dist. LEXIS 36156 (E.D.N.Y. Mar. 16, 2012), | |
| *Polk Cnty. v. Dodson,* 454 U.S. 312, 317-18, 102 S. Ct. 445, 70 L. Ed. 2d 509 (1981) | |
| *People v. Carroll*, (3 NY 2d 686,691). | |
| (*Foss v. City of Rochester*, 65 NY2d 247. | |
| *Dorsey v. Stuyyesant Town Corp.* | |
| *DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir. 2003) | *58* |
| *Vega v. Miller,* 273 F.3d 460, 470 (2d Cir. 2001). | |
| *Matusick v. Erie Cnty. Water Auth*.,757 F.3d 31, 47 (2d Cir. 2014). | |
| *Sacramento,* 523 U.S. at 845-46, 118 S.Ct. 1708 | |
| *Friedl v.City of New York,* 210 F.3d 79, 86-87 (2d Cir. 2000). | |

| | |
|---|---|
| *Joe's Friendly Serv. & Son, Inc.*, 645 B.R. 94 (Bankr. E.D.N.Y. 2022). | |
| | |